IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

ODESSA DEE HALL, as personal }
representative of the estate of Agnes }
Patterson }
}
Plaintiff, }
}
vs. }  CASE NO. CV 03-B-0386-NE
}
UNITED INSURANCE COMPANY }
OF AMERICA, }
}
Defendant. }

### MEMORANDUM OPINION

Currently before the court are a Motion to Strike the Affidavit of Odessa Dee Hall, a Motion to Strike the Affidavit of Rocco Petrella, and a Motion for Summary Judgment, all filed by defendant United Insurance Company of America ("defendant" or "United"). Plaintiff, Odessa Dee Hall ("plaintiff" or "Hall"), is the personal representative of the estate of Agnes Patterson who was the named beneficiary on a policy of group life insurance owned at least at one time by her son, Bobby Patterson. Mrs. Patterson died in 2000, two years after her son passed away. Hall now files this suit seeking payment of life insurance benefits allegedly past due and owing to Mrs. Patterson under Bobby Patterson's policy. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that the Motion to Strike the Affidavit of Odessa Hall is due to be granted in part and denied in part, the Motion to Strike the Affidavit of Rocco Petrella is due to be granted, and, there being no genuine issues of material fact, the Motion for Summary Judgment is due to be granted.



## I. FACTUAL SUMMARY

Bobby Patterson became disabled because of mental impairments in 1990 while he was employed at Teledyne-Brown Engineering in 1990. He was placed on disability leave at this time. Defendant, who issued Mr. Patterson's health insurance policy and his life insurance policy, waived the premiums for both policies for a period of approximately five years, during which time Patterson complied with defendant's requirement that he submit periodic medical documentation of his continued disability.

In August 1995, Mr. Patterson completed a "Waiver of Premium Questionnaire," sent to him by defendant, in which he stated, "I really do not wish this insurance to continue. It doesn't help me at all." In response to this information, defendant twice requested that Mr. Patterson complete a waiver form if he wanted to terminate his life insurance policy.[1]

A document in evidence dated April 5, 1996 and purportedly signed by Mr. Patterson states, "I, Bobby M. Patterson request that my waiver of premium for my group life insurance policy through my former employer Teledyne Brown Engr. be discontinued effective immediately." Accordingly, on July 23, 1996, defendant sent Patterson a letter informing him that his life insurance policy had been terminated as per his request. (Letter from Faust to Mr. Patterson of 7/23/1996.)

---

[1] The first letter United sent him reads, "In your correspondence dated 8/30/95, you mentioned that you did not want for this group life insurance policy to continue because "it didn't help me at all". If you want to cancel this benefit, please fill out the disclaimer attached and return it to me in the envelope provided." (Letter form Doris Faust of United to Mr. Patterson of 3/5/1996.)

In the complaint, plaintiff alleges that United breached the terms of the life insurance policy and in so doing its actions constituted a bad faith refusal to pay.[2]

## II. DISCUSSION

Defendant now moves for summary judgment, contending that Mr. Patterson terminated his insurance in 1996 when he executed the Waiver. Plaintiff contends either that (1) Mr. Patterson did not sign the Waiver or the Questionnaire, or (2) even if he did, Mr. Patterson was mentally incompetent and therefore incapable of signing a binding contract. Defendant also moves to strike the affidavits of Odessa Hall and Rocco Petrealla, filed in opposition to the motion for summary judgment. The court will take up the motions to strike before turning to the motion for summary judgment.

### A. MOTIONS TO STRIKE

#### 1. Affidavit of Odessa Dee Hall

Defendant moves to strike Hall's affidavit in its entirely because it asserts that the contents of the affidavit are not admissible under the Federal Rules of Evidence, and/or do not create genuine issues of material fact. Defendant specifically takes issue with Hall's opinions about the authenticity of Mr. Patterson's signatures on two pertinent documents and the severity of his mental impairments.

In the Eleventh Circuit, lay opinion testimony about the genuineness of another's handwriting or signature is governed by Federal Rules of Evidence 701 and 901(b)(2). *See United States v. Barker*, 735 F.2d 1280, 1283-84 (11th Cir. 1984) (discussing non-expert opinion testimony about handwriting in context of both Rule 701 and Rule 901(b)(2)). Rule 701

---

[2]Alternatively, plaintiff alleges a claim for ERISA benefits.

provides that lay opinion testimony is admissible where it is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding . . . of the determination of a fact in issue."[3] Rule 901(b)(2) is more specific. It provides that non-expert opinion evidence is admissible as to the "genuineness" of handwriting where it is "based upon *familiarity* not acquired for purposes of the litigation." F.R.E. 901(b)(2) (emphasis added).

In *United States v. Binzel*, 907 F.2d 746 (7th Cir. 1990), the plaintiff, Binzel, appealed the court's ruling that a signed guaranty was authentic. In his affidavit, Binzel testified that he had become familiar with the signature of the guarantor, Bauer, having observed him execute documents and having seen other documents purportedly executed by him, and that, in his opinion, the signature on the guarantee had been forged. The appellate court stated that under 901(b)(2) "there must be a minimal factual basis from which knowledge of, and a familiarity with, another's handwriting might reasonably have been acquired, in the absence of which the opinion evidence may be properly excluded." *Binzel*, 907 F.2d at 749 (citations omitted). In rejecting plaintiff's opinion, the court reasoned as follows:

> Binzel does not identify the nature of the "documents" to which he refers or attempt to establish the authenticity or genuineness of those documents. Neither does he identify a relationship or course of business with Bauer that would reasonably familiarize him with Bauer's signature. His opinion as to the authenticity of Bauer's signature is based on nothing more than conclusory, self-serving allegations, and as such does not raise a genuine issue of material fact which would have precluded summary judgment.

*Id.*

Hall's affidavit, like the affidavit in *Binzel*, does not explain how she became familiar with Patterson's signature other than in very general terms. Her affidavit states:

---

[3]The other requirements of Rule 701 are inapplicable.

>Over the course of time that I knew Bobby Patterson, [more than thirty years,] I became familiar with his handwriting. I saw him write, received correspondence from him and helped him review documents which he executed in my presence. I have examined the purported signatures of Bobby Patterson, dated August 30, 1995 [Questionnaire] and April 5, 1996 [Waiver] and they do not appear to be his handwriting.

(Hall Aff. at 1.)

Although Hall testifies that she knew Mr. Patterson for thirty years, she does not identify a relationship with Mr. Patterson that would allow one to reasonably conclude that she has in fact gained a certain familiarity with his signature. She has not testified to one specific document she witnessed him write, nor one she watched him execute or one she received from him. Without elaboration as to the facts of even one encounter that would provide support for her familiarity with Mr. Patterson's signature, the court will not assume she is capable of offering a meaningful opinion as to the authenticity of his signature.[4]

Hall's declaration of familiarity is little more than conclusory. In contrast, the familiarity of other witnesses whom courts have allowed to give lay opinion testimony regarding another's handwriting has been better substantiated. In the following cases, the familiarity of the witnesses are demonstrated by more particularized factual showings than the one made by Hall. *United States v. Scott*, 270 F.3d 30, 48-49 (1st Cir. 2001) (finding IRS agent sufficiently familiar with individual's signature to give his lay opinion as to individual's handwriting where, over the course of multi-year criminal investigation, he had reviewed "examples of [the individual's] handwriting that included three to five letters, five to ten court pleadings, signature cards to open

---

[4]There is no indication in the record that the documents alleged to be signed by someone other than Mr. Patterson were sent to a different location than the correspondence he did receive. Furthermore, there is no evidence that anyone might have lived with Mr. Patterson or otherwise taken care of him or handled his affairs while he was on disability leave.

three bank accounts in [individual's] name, fifty or sixty checks and deposit slips for those accounts, five to ten money orders, applications to file tax returns electronically, two driver's licenses, a pilot's license, and five to ten forms [individual] had signed as part of booking procedures at police stations, among others"); *United States v. Wiseman*, 1993 WL 118176, at *5 (9th Cir. 1993) (finding witness's familiarity with individual's signature "more than adequate" where he was "long-time associate" of individual and could identify particular characteristics of his signature); *United States v. Tipton*, 964 F.2d 650, 652, 655 (7th Cir. 1992) (finding that lay witness was "*qualified to testify*" regarding the signature and handwriting of a co-worker because he was familiar with them having observed documents prepared by the co-worker; witness was trained by, and had his work supervised by the co-worker) (emphasis added); *United States v. Barker*, 735 F.2d 1280, 1283 (11th Cir. 1984) (affirming admission of witness's lay opinion about authenticity of handwriting of a co-worker).

    Hall has not demonstrated that she is sufficiently familiar with Mr. Patterson's signature to warrant admission of her lay opinion testimony under Rule 901(b)(2) as to the authenticity of his signature on the Waiver and the Questionnaire. The court also finds that Hall's lay opinion testimony runs afoul of the requirements of Rule 701. Because Hall does not meet a threshold showing that she was familiar with Mr. Patterson's signature, her opinion testimony as to the authenticity of the signatures on the Waiver and the Questionnaire would not be rationally based on her own perceptions nor helpful to the determination of a fact in issue. *See Scott*, 270 F.3d at 49 (1st Cir. 2001) ("[W]e think that Rule 701's requirement that lay opinion testimony be helpful to the jury would be best read in light of the limits Rule 901(b)(2) places on lay opinion testimony regarding handwriting.").

For the foregoing reasons, the court finds that Hall's opinion as to the authenticity of Mr. Patterson's signatures is inadmissible. The court will therefore strike these inadmissible portions from her affidavit.[5]

Defendant also seeks to strike the remainder of Hall's affidavit because "she purports to testify as to the mental state of Bobby Patterson" but "is not in any way qualified to make valid psychological judgments regarding another person." Hall's affidavit includes her own observations of Mr. Patterson's behavior, as well as some conclusory remarks about Mr. Patterson's mental condition and capacity. For example, she states that he was "incapable of managing his own affairs or the activities of daily living." The court agrees with defendant that those portions of her affidavit which purport to make conclusions as to Mr. Patterson's mental capacity are due to be stricken as Hall is not qualified to testify to those matters.[6] However, Hall's testimony about Patterson's behavior should be admissible where it is based on her personal knowledge.[7] The court will therefore only strike the remaining portions of Hall's affidavit wherein she makes conclusory remarks about Mr. Patterson's mental capacity.

---

[5]Though the court's ruling relies in no part on the following observation, the signatures on the Waiver and Questionnaire, which Hall alleges are forgeries, are, as best the court can tell, indistinguishable from the other, uncontested signatures of Bobby Patterson in the record. The court would remind counsel of his obligations under Fed. R. Civ. P. 11, and notes, as the court did in *Binzel*, that "attempts to manufacture evidence in response to a motion for summary judgment may be a basis for Rule 11 sanctions." *Binzel*, 907 F.2d at 749 n.3.

[6]The court notes that some of Hall's conclusions run contrary to the opinion of Mr. Patterson's own doctor. (*See* Pl.'s Ex B, Treating Physician's Statements 1-3 (indicating that doctor felt plaintiff was "competent to endorse checks and direct the use of the proceeds thereof with a clear understanding of the nature of his acts")).

[7]The admissible portions of her affidavit do not create genuine issues of material fact with regard to Mr. Patterson's capacity to enter into a binding contract.

### 2. Affidavit of Rocco Petrella

Although Petrella's affidavit purports to give a medical opinion about Mr. Patterson's capacity to enter into a contract, the affidavit meets none of the elements required of admissible expert testimony. Plaintiff bears the burden of demonstrating that Petrella's expert testimony meets the criteria articulated in Federal Rule of Evidence 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

See also *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256-57 (11th Cir. 2002) (stating that party proffering expert testimony has the burden to lay the foundation of its admissibility, which under Rule 702 requires a showing that the expert was 'qualified to testify competently regarding the matters he intend[ed] to address; [ ] the methodology by which the expert reach[ed] his conclusions is sufficiently reliable; and [ ] the testimony assists the trier of fact.') (quoting *Maiz v. Virani,* 253 F.3d 641, 664 (11th Cir.2001)).

Petrella is not a medical doctor, and plaintiff has not sufficiently demonstrated that counselors with similar training are qualified to render an opinion as to an individual's mental capacity. Furthermore, plaintiff has not demonstrated that the information Petrella reviewed contained sufficient facts or data upon which to base such an opinion. Petrella never met or treated Mr. Patterson. All he did was review three medical records completed by a doctor(s) who opined without elaborating that plaintiff suffered from depression and paranoia. (*See* Pl.'s

8

Ex. B, Medical Records.) Petrella does not cite to any scientific methodology or literature supporting his conclusions or approving of the method he employed to make those conclusions.

There is no indication in his affidavit that Petrella's opinion is based on a sufficient amount of facts and/or data, nor that it was the based on the application of reliable methods and principles of the medical profession. Therefore, the plaintiff has not met her burden of proof under Rule 702, and the court will strike Petrella's affidavit.

## B. MOTION FOR SUMMARY JUDGMENT[8]

Defendant presents incontrovertible evidence that Patterson terminated his insurance in 1996 when he signed the Waiver. There is no reason to question the validity of the Waiver. Without an existing policy of life insurance, United owed no duty to pay life insurance benefits to Mr. Patterson's beneficiary,[9] and, consequently, its refusal to pay was justified. Given the

---

[8]Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

[9]This finding is and would be determinative whether the court ruled that plaintiff's ERISA claims super-preempted her claims under state law, or that plaintiff stated claims only under state law.

court's rulings on the two motions to strike, there are no genuine issues of material fact and defendant is entitled to judgment as a matter of law.

### III. CONCLUSION

For the reasons stated herein, the Motion to Strike the Affidavit of Odessa Dee Hall will be granted in part and denied in part, the Motion to Strike the Affidavit of Rocco Petrella will be granted, and the Motion for Summary Judgment will be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this the 26th day of August, 2003.

SHARON LOVELACE BLACKBURN
United States District Judge